# Aldrich Mining Company *v.* Pearce.

*Trover.*

(Decided April 21, 1910.  Rehearing denied June 30, 1910.
52 South. 911.)

1. *Trover and Conversion; Property Severed from Freehold; Title or Right to Possession.*—Title to land cannot be inquired into in a purely personal action, the owner of the freehold cannot maintain a personal or transitory action to recover a part of the freehold, or damages for the conversion thereof where it has been converted into personalty by a severance, if at the time of the severance he was not in actual or constructive possession of the land.

2. *Same.*—Where the owner of the freehold has either actual or constructive possession of the land, a possession which is merely transitory for the purpose of making the trespass or severing a part of the freehold, is not sufficient to defeat a recovery by the owner of the freehold in an action of trover for the conversion of a chattel, rendered such by severance pending such transitory possession.

3. *Property; Personalty and Realty; Nature and Scope of Remedy.* —Ownership or title to land may be inquired into where the action is for trespass or for the statutory penalty of cutting trees, but it may not be inquired into in purely personal actions such as trover, detinue, assumpsit, replevy, etc.

4. *Same; Conversion From Realty to Personalty; Nature and Scope of Remedy.*—Where a part of the freehold is severed from the freehold, such as coal, minerals, sand, gravel, crops, etc., or fixtures, they become personalty and recovery may be had of the property as a chattel, or for damages for its conversion in an action of trover, detinue or other personal action.

APPEAL from Marion Circuit Court.

Heard before Hon. A. H. ALSTON.

Action by James P. Pearce against the Aldrich Mining Company in trover for the conversion of certain coals and minerals. Judgment for plaintiff and defendant appeals. Reversed and remanded.

JOHN C. FORNEY, ALEX M. LONDON, and BANKHEAD & BANKHEAD, for appellant. The testimony of Pearce showed that he was not in possession when the conversion happened, and hence, his action will not lie.— *Garrett v. Sewell*, 95 Ala. 457; *Ferris v. Hoglan*, 121 Ala. 240. The appellant was also entitled to the affirmative charge because the evidence showed that the defendant was holding adversely at the time the coal was severed.—*Hooper v. Watson*, 73 Ala. 254; *Yawkey's Case*, 108 Ala. 270; *Stewart v. Tucker*, 106 Ala. 321. The testimony of the ex parte surveyor should have been excluded.—*Nolan v. Palmer*, 21 Ala. 66; *Humes v. Bernstein*, 72 Ala. 546; *Hess v. Rudder*, 117 Ala. 525; *Bridges v. McLendon*, 56 Ala. 335.

W. C. DAVIS, and S. D. & J. B. WEAKLEY, for appellee. Nelson was not in such possession as would oust the possession of Pearce.—*Ferris v. Hoglan*, 121 Ala. 240; *White v. Yawkey*, 108 Ala. 270; *Hess v. Rudder*, 117 Ala. 525. Counsel discuss the charges refused the appellant, but without citation of authority except those formerly cited.

MAYFIELD, J.—This was an action of trover for the conversion of 3,000 tons of coal, mined from the S. E. 1-4 of the S. E. 1-4 of section 10, township 12, range 12 west, in Marion county, Ala. The case was tried upon the general issue in short, by consent, with leave for defendant to give in evidence anything that would be a defense; and for the plaintiff to give in evidence anything that would be good as a replication if specially

pleaded. The trial resulted in verdict and judgment for plaintiff for $1,023, from which judgment the defendant appeals, here assigning various errors on the part of the trial court.

The plaintiff, Pearce, claimed to be the owner of the S. E. 1-4 of section 10, township 12, range 12 west, which was contiguous to, and just west of, the S. W. 1-4 of section 11 of said township and range; and averred that the defendant company had mined across the section line, between sections 10 and 11, onto plaintiff's lands, thereby converting his coal.

It appears that the real controversy between the parties, and that upon which the rights of both parties depended, was the location of the true boundary line between the S. E. 1-4 of the S. E. 1-4 of section 10, and the S. W. 1-4 of the S. W. 1-4 of section 11, this being a part of the section line between such sections—the defendant claiming that the true line was one running north and south from a certain red oak tree, known for many years as the "Red Oak Corner"; that this tree bore the marks and hacks of surveyors, as if it were a monument or witness tree. While it had been known as such for many years, it was not conclusively shown to have been so made by the original survey of the United States.

On the other hand, plaintiff introduced several surveyors, who had made surveys of the lands in question in trying to ascertain and fix the boundary lines of these lands; and, while their surveys did not exactly coincide, they all located the boundary line between the S. E. 1-4 of the S. E. 1-4 of section 10, and the S. W. 1-4 of the S. W. 1-4 of section 11, at some distance east of the line run north and south from the "Red Oak Corner." The testimony of these surveyors was to the effect that they could not make the "Red Oak Corner" check up with

the original field notes of the government survey. These surveys offered by plaintiff, as to the location of these boundary lines, appear to have been made after the coal was mined and preliminary to the bringing of this action.

The coal in question was taken from this strip of land lying between the two lines, which the parties respectively claimed to be the boundary line btween the two 40's of land. If the "Red Oak Corner" line was the true line, then clearly defendant had not taken any of plaintiff's coal; but if, of any of the later surveyed lines, any one was the true line, then plaintiff was entitled to recover, provided he had shown title to the S. E. 1-4 of the S. E. 1-4 of section 10.

The plaintiff claimed to have acquired title by adverse possession, under color of title, through a deed executed to him by one Butler and wife, in 1875, but which did not pass the title thereto, because it was the homestead of Butler at the time, and because the instrument was not properly acknowledged by Butler's wife. This color of title attempted to convey the whole of the S. E. 1-4 of section 10. The plaintiff appears never to have been in the actual possession of the particular strip of land in question, but he claims that, through his tenants and others holding under him, he had been in the actual possession of a part of this quarter section conveyed for 10 years, and that this color of title extended his possession to the whole of the quarter section which included the land in question.

The defendant appears to have been in the actual possession of the strip of land in question, prior to, and, of course, at the time the coal was mined; certainly so, as for the purpose of mining the coal, claiming also to have been in possession of the surface. But as to this latter contention there is some dispute, the plaintiff

claiming that the defendant's possession (whatever it was) was not adverse as to him, but was only the possession of a contiguous owner not knowing the true boundary line and only claiming to the true boundary line, wherever it might be found to be. The defendant never claimed title or right to any part of the S. E. 1-4 of the S. E. 1-4 of section 10, until it purchased and acquired deed from Butler and wife to the S. E. 1-4 in June, 1903, just a short while before the bringing of this suit; but it claimed on the trial, and its proof tended to show, that it claimed the land and coal in question as being a part of the S. W. 1-4 of the S. W. 1-4 of section 11—not by this description, but as being a part of the 40 acres just east of the S. E. 1-4 of the S. E. 1-4 of section 10. But all the proof shows that whatever actual possession there was of the particular strip in question, as distinguished from constructive possession, was in the defendant. If the plaintiff had title to it, it was by virtue of 10 years' continuous adverse possession acquired under his color of title prior to the taking of the coal, and his possession was that acquired by his being in the actual possession of a part of the quarter section, and that possession being extended to the land in question by virtue of his color of title. If plaintiff never acquired the title to any part of the S. E. 1-4 of section 10, then of course he never acquired title to the part in question. If the part in question was not a part of the S. E. 1-4 of the S. E. 1-4 of section 10, but was a part of the S. W. 1-4 of the S. W. 1-4 of section 11, then of course he had no title thereto, though he acquired title to the S. E. 1-4 of said section 10. In other words, to support a judgment for plaintiff, the jury must have determined that plaintiff had title to the particular land in question. This they could only do, by determining whether or not

he acquired the legal title to the S. E. 1-4 of section 10 by adverse possession for 10 years; and if he did so acquire title thereto, then was the strip in question a part of that quarter section, or was it a part of the S. W. 1-4 of the S. W. 1-4 of section 11? In other words, they must have found the boundary line between sections 10 and 11, at least to the extent of saying whether the land in question was east or west of that line.

The serious questions necessarily involved in this case are: (1) Can the title to land be determined in an action of trover? (2) Could the plaintiff recover in this action, without a determination of the title to the land from which the coal in question was mined? The first question we think is well settled, by numerous authorities, in the negative.

The owner of the freehold cannot maintain a personal or transitory action to recover a part of the freehold, or damage for conversion thereof, which has been converted into personalty by a severance from the freehold, if at the time of the severance he has not the actual or constructive possession of the land.—*Cooper v. Watson,* 73 Ala. 254; *Fielder v. Childs,* 73 Ala. 567; *Beatty v. Brown,* 76 Ala. 267; *Street v. Nelson,* 80 Ala. 230; *Rogers v. Brooks,* 99 Ala. 34, 11 South. 753; *Keller v. Bullington,* 101 Ala. 270, 14 South. 466; *Stewart v. Tucker,* 106 Ala. 321, 17 South. 385.

It is true that the above authorities, and others, hold that the plaintiff cannot recover because the defendant was in the adverse possession at the time of the severance; but the true reason of the rule, as often stated in these cases, is, not that the adverse possession itself defeats the action, but that it requires or necesitates an inquiry into the legal title to the land, which all the authorities hold cannot be done in a purely personal and transitory action. If that could be done, the titles

to land in one county could be tried by an action in another, or titles to land in this state could be determined by personal action in another.—*Cooper v. Watson*, 73 Ala. 254, and cases there cited and quoted. The rule is general if not universal that titles to land cannot be inquired into in purely personal actions. There are appropriate remedies provided for contesting and trying titles to land, which must be resorted to. It would be attended with perpexing confusion and practical mischief if parties were not limited to these actions, to settle titles to land.

Take the case at bar: This trial did not and could not settle the titles to this strip of land, nor did or could it settle the question of the possession thereof. Suppose an action should be brought, to quiet the titles to this strip of land in question, or ejectment brought, for it, or the boundary between sections 10 and 11 established by appropriate actions, and the "Red Oak Corner" determined to be the boundary, then unquestionably the plaintiff could not recover; and if he had severed coal or timber therefrom then unquestionably this defendant could maintain trover or detinue against this plaintiff therefor. Surely each party is not entitled to recover from the other for conversion of the same property. In an action for trespass and for statutory penalty for cutting trees, ownership or title may be inquired into, but such is not true as to purely personal actions such as trover, detinue, assumpsit, replevin, etc.— *Rogers v. Brooks*, 99 Ala. 34, 11 South. 753; *White et al. v. Farris*, 124 Ala. 461, 27 South. 259. All the authorities above held that when any part of the freehold, such as coal, minerals, sand, gravel, crops, or fixtures, etc., are severed from the freehold, they then become personalty, and an action of trover, detinue, or other personal action may be brought to recover the property

as a chattel, or damages for the conversion or for wrongful conversion. There are a great number of later cases, holding this same doctrine. See *Ivy Coal Co. v. Alabama Coal Co.*, 135 Ala. 579, 33 South. 547, 93 Am. St. Rep, 46; *White v. Yawkey Co.*, 108 Ala. 270, 19 South. 360, 32 L. R. A. 199, 54 Am. St. Rep. 159; *Warrier Co. v. Mabel Co.*, 112 Ala. 624, 20 South. 918; *Birmingham Co. v. T. C., I. & R. R. Co.*, 127 Ala. 137, 28 South. 679; *Karthaus v. N., C. & St. L. R. R. Co.*, 140 Ala. 438, 37 South. 268.

It is also true that, in actions like this, it is not every assertion of an adverse claim to the land, by the defendant, which will defeat the action of the plaintiff to recover in trover for the conversion of the chattel which was rendered such by being severed from the freehold. It must be an assertion in good faith. A possession which is merely transitory, for the purpose of making the trespass or severing a part of the freehold, is not sufficient to defeat a recovery by the owner of the freehold, who has either actual or constructive possession of the land.—*Young v. Herdic*, 55 Pa. 172; *Youmans v. Francisco*, 15 N. Y. Wkly. Digest, 312; *Stewart v. Tucker*, 106 Ala. 321, 17 South. 385.

In all cases the court should look into the substance of the claims and rights of the parties, and not to the mere show or claim for the mere purpose of maintaining or defeating the action; and if it appears that in truth it is a trial of title to land, then it cannot be done in a personal and transitory action, but must be tried in another form of action appropriate to the rights and relief.—*Harlan v. Harlan*, 15 Pa. 507, 53 Am. Dec. 612.

The rule has also been thus stated: In personal and transitory actions, such as trover, detinue, replevin, and the like, the title to land may be examined or looked into far enough to determine whether or not

[Aldrich Mining Co. v. Pearce.]

there are bona fide adverse claimants. If such claims are found to exist, the validity thereof cannot be tried in such actions. Such actions are purely to try title to personalty, and not that to lands.—Cobbey on Replevin, 353, 374, 376, 382; 24 Am. & Eng. Ency. Law, § 486.

It is true that it does not require actual possession of the land, on the part of the plaintiff, to maintain the personal action for a part of the freehold, after it is severed; constructive possession is sufficient. But constructive possession can never be in one except the owner or those claiming through him. Constructive possession, of necessity, depends upon ownership as its basis. If this were not true, both parties in this action, under the evidence in this record, could maintain trover for the coal taken from this strip or zone of land in question; the defendant certainly, because it was in actual possession certainly, and claimed it under deed conveying the S. W. 1-4 of the S. W. 1-4 of section 11. The plaintiff claims to be in constructive possession, because he claims under color of title, his deed conveying the S. E. 1-4 of section 10, and he claiming that this zone in question is a part of section 10. Each could maintain the same action against the other, for the same property, under the same state of facts. Hence, to determine which of the two conflicting claims is right or superior, the title to the land must of necessity be determined.

It therefore follows that the general affirmative charge should have been given for the defendant.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON and McCLELLAN, JJ., concur.

Response to Application for Rehearing.

MAYFIELD, J.—On a thorough examination of this application for a rehearing, and on further examination of the record, we are constrained to adhere to the orig-inal opinion and to the conclusion and decision reached on the original hearing. In confirmation of the cor-rectness of the conclusion that the plaintiff could not in this action establish title, we may add that the rec-ord in this case shows conclusively that the plaintiff had no possession to the zone or band of land from which the coal in question was mined by the defendant. other than the constructive possession which the legal title draws to itself. While such constructive posses-sion is sufficient to support the action, the plaintiff did not and could not show such constructive possession in this action. He confessedly had no documentary title to this particular land or to any other lands adjoining it. The deed under which he claims title was shown to be absolutely void because it was an attempt to convey the homestead, and was not separately acknowledged by the wife as required by the statute; consequently, at best, it could answer only as color of title.

Hence, in order to establish title which would draw to it constructive possession sufficient to support the ac-tion, he must prove the open, notorious, and continu-ous adverse possession of the land for 10 years prior to the alleged conversion of the coal by the defendant. This transitory action of trover was not the appropriate action in which to establish such title; and without es-tablishing it the plaintiff showed no right to recover.

It matters not what may be the rights of the defend-ant—whether or not he was holding the land adversely, or where the dividing line between sections 10 and 11 may be. The plaintiff having proven no property in himself, general or special, and having shown no right

to the immediate possession of the coal thus mined by the defendant, he could not recover in the action of trover.